UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDIP YUKSEL,<br><br>        Plaintiff,<br><br>    v.<br><br>TWITTER, INC.,<br><br>        Defendant. | Case No. 22-cv-05415-TSH<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 17 |

## I.    INTRODUCTION

Pro se Plaintiff Edip Yuksel is suing Defendant Twitter, Inc. because it suspended his account. Pending before the Court is Twitter's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 17. Yuksel filed an Opposition (ECF No. 22) and Twitter filed a Reply (ECF No. 24).[1] The Court finds this matter suitable for disposition without oral argument. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Twitter's motion for the following reasons.[2]

## II.    BACKGROUND

Yuksel states he is "an internationally known author and human rights activist" who has "powerful cases against both Twitter and YouTube, which involve their international corrupt deal with the Turkish government." Compl. at 1, ECF No. 1. He alleges Twitter permanently suspended his account on April 6, 2020 "without any specific reason despite my appeal several

---

[1] On September 12 Yuksel filed a "Second Response to Twitter Inc.," which Twitter moves to strike, ECF Nos. 27, 28. As Yuksel's second response is an unauthorized surreply, the Court **GRANTS** Twitter's motion to strike. *See* Civ. L.R. 7-3(d).
[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 37, 39.

times." *Id.* He alleges Twitter suspended his account "to appease Recep Tayyip Erdogan, the Turkish dictator who was my former friend and comrade." *Id.* at 1-2. He suspects the suspension is because he "used some strong words (never obscenities and never threats) for the ruling party AKP, which I and many consider to be corrupt and fascist." *Id.* at 2. Yuksel alleges Twitter caused the following harm:

> 1. Sold me to a dictator who filed lawsuit against 36,066 dissidents, including me, in 2019 alone.
>
> 2. Suspended my account. Did not provide me with a specific reason nor gave me chance to defend myself against the unknown charge.
>
> 3. Destroyed all the intellectual content I had created in 7 years.
>
> 4. Cut my connections from more than 142,000 followers and prominent contacts I had built and fostered in 7 years.
>
> 5. Harmed my public image and reputation since many of my followers and readers thought I had blocked them intentionally.

*Id.* at 2-3. He demands Twitter reinstate his account, pay $142 million for breach of contract and punitive damages, and "[s]top serving corrupt dictators and stop selling US citizens for money." *Id.* at 3.

Twitter filed the present motion to dismiss on July 5, 2022, arguing section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("CDA"), bars Yuksel's claims.

### III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint

2

must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   REQUEST FOR JUDICIAL NOTICE

Twitter requests the Court take judicial notice of the following documents for purposes of ruling on its motion:

    1. A true and correct copy of Yuksel's Twitter profile, available at https://twitter.com/edipyuksel?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor

    2. A true and correct copy of the archived version of Twitter's sign-up page for new users as it existed on January 1, 2011, available at https://web.archive.org/web/20110101061940/https://twitter.com/signup.

    3. A true and correct copy of the archived version of Twitter's Terms of Service as they existed on January 1, 2011, available at https://web.archive.org/web/20110101061940/https://twitter.com/to.

    4. A true and correct copy of the archived version of Twitter's "Twitter Rules" as they existed on January 1, 2011, available at https://web.archive.org/web/20101231192602/http://support.twitter.

        com/articles/18311-the-twitter-rules.

    5.  A true and correct copy of Twitter's current Terms of Service, available at https://cdn.cms-twdigitalassets.com/content/dam/legal-twitter/siteassets/terms-of-service-june-10-2022/Twitter_User_Agreement_EN.pdf.

ECF No. 19; Trujillo-Jamison Decl., Exs. A-E, ECF No. 18. Yuksel has not opposed Twitter's request.

In general, the Court may not look beyond the four corners of a complaint in ruling on a Rule 12(b)(6) motion, except for documents incorporated into the complaint by reference and any relevant matters subject to judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam); *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). The Court may take judicial notice of matters that are either (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

The Court finds these documents are properly subject to judicial notice because they are publicly available webpages and their contents are not subject to reasonable dispute. *See Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (and cases cited therein) ("In general, websites and their contents may be judicially noticed."); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1205 (N.D. Cal. 2014) (taking judicial notice of webpage screenshot); *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983-85 (N.D. Cal. 2010) (taking judicial notice of documents obtained from the Internet); *Lindora, LLC v. Limitless Longevity LLC*, 2016 WL 6804443, at *3 (S.D. Cal. Sept. 29, 2016) (taking judicial notice of party's "social media accounts" as "publicly accessible webpages").

With respect to Exhibits C through E, courts in the Ninth Circuit routinely take judicial notice of terms of services. *See, e.g., Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018) (taking judicial notice of Google's Terms of Service); *Matera v. Google Inc.*, 2016 WL 5339806, at *7 (N.D. Cal. Sept. 23, 2016) (same).

That Exhibits B through D are archived webpages obtained from the Internet Archive's Wayback Machine does not change the analysis. "[D]istrict courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine pursuant to [Rule

4

201]." *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 829 (N.D. Cal. 2019); *see also Parziale v. HP, Inc.*, 2020 WL 5798274, at *3 (N.D. Cal. Sept. 29, 2020) (same) (collecting cases); *Brown v. Google LLC, 2021 WL 949372*, at *5 (N.D. Cal. Mar. 12, 2021) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

Accordingly, Twitter's request for judicial notice is **GRANTED**.

## V.   DISCUSSION

### A.   Yuksel's Claims are Barred by Section 230

As Yuksel seeks to hold Twitter liable for its decision to suspend his account, Twitter is immune under the CDA. Section 230(c)(1) of the CDA provides: "No provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). This provision protects from liability an interactive computer service provider when it exercises traditional editorial or publishing functions, including whether to post content or to withdraw content. *See, e.g., Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) (stating that "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content").

The elements of Section 230(c)(1) are easily met. First, Twitter is a "provider . . . of an interactive computer service" under the CDA. *See* 47 U.S.C. § 230(f)(2); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (the "prototypical" example is an "online messaging board"); *Brittain v. Twitter, Inc.*, 2019 WL 2423375, at *2 (N.D. Cal. June 10, 2019) (Twitter is an interactive computer service). Second, Yuksel seeks to hold Twitter liable for decisions regarding "information provided by another information content provider"—that is, information that he, rather than Twitter, provided. The Court notes that Yuksel appears to concede these two prongs are met as he states in his response: (1) Twitter is an "interactive computer service" provider; and (2) his account, and the content he posted on it, constitute "information provided by another information content provider" within the meaning Section 230. Opp'n at 9-

10; *see also Kiprilov v. Nat'l Bd. of Med. Examiners*, 2016 WL 6900723, at *9 (C.D. Cal. Aug. 25, 2016) (relying on pro se plaintiff's concession stated in opposition brief in granting motion to dismiss under Fed. R. Civ. P. 12(b)(6)); *Louis v. Cty. of Sacramento*, 2017 WL 661954 (E.D. Cal. Feb. 17, 2017), at *4 (same).

Third, Yuksel seeks to treat Twitter as the publisher because his claims derive entirely from Twitter's decision to exclude his content and suspend his account—that is, traditional publishing functions. *See Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."); *Barnes*, 570 F.3d at 1103 ("[R]emoving content is something publishers do."); *Rangel v. Dorsey*, 2022 WL 2820107, at *3 (N.D. Cal. July 19, 2022) (finding Twitter's decision to exclude the plaintiff's content and suspend his account is a traditional publishing function).

Indeed, in circumstances analogous to those here, the Ninth Circuit recently affirmed that a platform's suspension of a user's account is protected publishing activity under Section 230. *King v. Facebook, Inc.*, 845 F. App'x 691 (9th Cir. 2021) ("*King 1*"). In *King*, a pro se plaintiff was an alleged activist who filed suit asserting claims based on, among other things, a platform "suspending his accounts," alleging breach of contract, among other claims. *King v. Facebook, Inc.*, 2019 WL 4221768, at *2-3 (N.D. Cal. Sept. 5, 2019) ("*King 2*"). As here, the plaintiff alleged his account was suspended because of his political speech about issues implicating civil rights; the plaintiff alleged that the social media platform had acted in "bad faith" and was engaged in some sort of nefarious international "mission." *Id.* The district court determined that "each of [plaintiff's] claims" were "based on Facebook's . . . moderator['s] decisions" about "which accounts to suspend or not." *Id.* The district court held that the plaintiff's claims sought "to treat Facebook as a publisher," and that as a result Section 230 required their dismissal. *Id.* On appeal, the Ninth Circuit held the district court "properly dismissed" the claims because Facebook was "immune under Section 230" from them. *King 1*, 845 F. App'x at 692. In so holding, the Ninth Circuit relied on its long-standing reasoning that "'any activity that can be

boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.'" *Id.* (quoting *Roommates*, 521 F.3d at 1170-71).

As in *King*, Yuksel's claims arise from Twitter's decision to suspend his account purportedly because of his political speech on the platform. He claims to "have evidence that Twitter deleted [his] account to appease Recep Tayyip Erdogan, the Turkish dictator . . . ." Compl. at 1-2. Yuksel also alleges he "suspect[s]" the "reason for suspension" may be that he "used some strong words . . . for the ruling [Turkish political] party . . ." *Id.* at 2. Like the plaintiff in *King*, Yuksel's claims seek to impose liability based on Twitter's protected publishing functions. Section 230 requires their dismissal. *See Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (affirming dismissal of claims "arising from MySpace's decisions to delete [plaintiff's] user profiles . . . because these claims were precluded by section 230(c)(1)"); *Al-Ahmed v. Twitter, Inc.*, 2022 WL 1605673, at *9 (N.D. Cal. May 20, 2022), *appeal dismissed sub nom. Al-Ahmed v. Twitter, Inc.*, 2022 WL 4352712 (9th Cir. July 7, 2022) (Section 230 barred various claims against Twitter premised upon plaintiff's account suspension); *King v. Facebook, Inc.*, 2021 WL 5279823, at *13 (N.D. Cal. Nov. 12, 2021) ("*King 3*")[3] (dismissing pro se plaintiff's claims premised upon "disabling of her account," where they were barred by Section 230); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119 (N.D. Cal. 2020) (Section 230 barred claims "based on Facebook's decision to remove [plaintiffs'] account" because they "are based on Facebook's decision *not to publish* [plaintiffs'] content" and therefore "seek to hold Facebook liable as a publisher or speaker of [plaintiffs'] content") (emphasis in original); *Brittain*, 2019 WL 2423375, at *3 (Section 230 barred pro se plaintiffs' claims against Twitter based on account suspension, where they "seek[] to treat Twitter as a publisher").

Yuksel also asserts (without authority) that his claims fall into one of Section 230's "exceptions" because he alleges that "Twitter has committed criminal acts according to Federal law, RICO," and because he "claim[s] that the Contract [he] signed with Twitter is deceptive and/or deficient." Opp'n at 7. Although Section 230(e)(1) provides a carve-out from its

---

[3] *King 3* is unrelated to *King 1* and *King 2*.

protections for federal criminal prosecutions, 47 U.S.C. § 230(e)(1), it does not provide any exception from Section 230 immunity for civil claims premised upon federal criminal statutes— including civil RICO claims. *See Gonzalez v. Google LLC*, 2 F.4th 871, 890 (9th Cir. 2021) ("Courts have consistently held that § 230(e)(1)'s limitation on § 230 immunity extends only to criminal prosecutions, and not to civil actions based on criminal statutes."); *Kimzey v. Yelp Inc.*, 21 F. Supp. 3d 1120, 1121 (W.D. Wash. 2014), *aff'd sub nom. Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016) (civil RICO claims do not fall within the "narrow exceptions to CDA immunity"; dismissing civil RICO claims as barred by Section 230).

Yuksel's suggestion that Section 230 provides an "exception" for his breach of contract claim likewise fails. By its terms, Section 230 does not provide any exception for contract claims. *See* 47 U.S.C. § 230(e). And courts routinely hold that Section 230 immunizes platforms from contract claims, where, as here, they seek to impose liability for protected publishing activity. *See, e.g., King 1*, 845 F. App'x at 692 (affirming dismissal of pro se plaintiff's contract claim based on, among other things, Facebook's suspension of his user account, because "'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230'") (quoting *Roommates*, 521 F.3d at 1170-71); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 28 (2021) ("many [courts] have concluded that [contract] claims were barred [by Section 230] because the plaintiff's cause of action sought to treat the defendant as a publisher or speaker of user generated content") (collecting cases).

In sum, all three prongs of the Section 230 analysis are satisfied. Section 230 therefore immunizes Twitter from Yuksel's claims, and dismissal is therefore required.

**B.    Yuksel Fails to Plausibly Allege His Claims**

Even if Section 230 did not require dismissal of Yuksel's claims, they must be dismissed.

**1.    Breach of Contract**

Although he alleges breach of contract in his complaint, in his opposition, Yuksel disavows this claim: "I do not claim breach of contract between me and Twitter." Opp'n at 10. His breach of contract claim must therefore be dismissed. *See Kiprilov*, 2016 WL 6900723, at *9 (relying on pro se plaintiff's concession stated in opposition brief in granting motion to dismiss

8

under Fed. R. Civ. P. 12(b)(6)); *Louis*, 2017 WL 661954, at *4 (same).

To the extent Yuksel does allege a breach of contract claim, it fails because it is based on the terms of service, which provide that Twitter may "at all times" "remove or refuse to distribute any Content" and "terminate users." Request for Judicial Notice, Ex. C at 1. And under the current Terms (to which Yuksel, by continuing to use Twitter's platform, has agreed to be bound), Twitter "may suspend or terminate [his] account or cease providing [him] with all or part of the Services at any time for any or no reason . . . . ." *Id.*, Ex. E at 10. Thus, Twitter had the contractual right under the Terms to suspend Yuksel's account, and his breach of contract claim therefore fails. *See Murphy*, 60 Cal. App. 5th at 35 (holding that breach of contract claim "necessarily fails . . . because Twitter's terms of service expressly state that they reserve the right to 'suspend or terminate [users'] accounts . . . for any or no reason' without liability"); *King 3*, 2021 WL 5279823, at *13; *Rangel*, 2022 WL 2820107, at *3 (finding plaintiff could not allege breach of contract claim after Twitter suspended his account because under the terms of service, Twitter could suspend his account "at any time for any or no reason," and Twitter therefore "violated no promise in suspending [plaintiff's] account[.]").

Yuksel asserts that he "do[es] not claim breach of contract between me and Twitter," but rather, "asks this Court" to find Twitter's terms of service "void and null" because they permit the "arbitrary and reckless deletion" of user accounts. Opp'n at 10, 13. However, breach of contract is the only contract theory alleged in the complaint, and in determining whether Rule 12(b)(6) dismissal is proper, "a court *may not* look beyond the complaint" to allegations "in opposition to a defendant's motion to dismiss." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (emphasis in original). In any event, Section 230 would bar this unpleaded theory. *See, e.g., Murphy*, 60 Cal. App. 5th at 36 (plaintiff's contract claim was barred by Section 230 where plaintiff alleged "Twitter's terms of service are substantively unconscionable because Twitter could use them to suspend or terminate user accounts for petty, arbitrary, irrational, discriminatory, or unlawful reasons," and are "unreasonably favorable to the more powerful party" and "unfairly one-sided"); *King 2*, 2019 WL 4221768, at *1 (dismissing various claims based on, among other allegations, plaintiff's account suspension and an "adhesive set of Terms of service,"

as barred by Section 230).

### 2. RICO

Yuksel also appears to bring a claim under the Racketeer Influenced and Corrupt Organizations Act. Compl. at 1. "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (internal quotations and citation omitted).

In his complaint, Yuksel alleges Twitter has an "international corrupt deal with the Turkish government," "deleted [his] account to appease" the President of Turkey, "[s]old [him] to a dictator," and is "risking the lives and freedoms of American citizens [in exchange] for receiving favors from corrupt and authoritarian world leaders." *Id.* at 1-2. Even if those allegations can be deemed to constitute "conduct" for purposes of his RICO claim, Yuksel fails to identify the "enterprise" subject to the RICO claim, nor any purported "pattern," "racketeering activity," or "injury" to "business or property" caused by it. Moreover, Yuksel's conclusory allegations that Twitter is somehow in cahoots with dictators fail to meet the basic pleading standards of *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 679 (determining whether "plausible claim" is alleged requires court to use "its judicial experience and common sense"); *Twombly*, 550 U.S. at 556 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Schultz v. Krause*, 2011 WL 6293939, at *4 (E.D. Cal. Dec. 13, 2011), *report and recommendation adopted*, 2012 WL 74779 (E.D. Cal. Jan. 9, 2012) ("Even though plaintiffs' complaint makes reference to federal statutes such as RICO . . . plaintiffs' fanciful and implausible allegations fail to state in a comprehensible manner how any federal rights were violated.") (granting motion to dismiss with prejudice). Yuksel's purported RICO claim must therefore be dismissed. *See United Brotherhood*, 770 F.3d at 845 (affirming dismissal of RICO claim for failure to adequately allege any racketeering activity).

### VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** Twitter's motion to dismiss. As leave to

amend would be futile, dismissal is with prejudice.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: November 7, 2022

THOMAS S. HIXSON
United States Magistrate Judge